## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **PIXMARX IP LLC,** | Case No. 3:20-cv-1157 |
| Plaintiff, | |
| v. | PATENT CASE |
| **SNAP INC.,** | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Pixmarx IP LLC ("Pixmarx" or "Plaintiff") files this Complaint against Snap Inc. ("Snap" or "Defendant") for infringement of U.S. Patent No. 9,477,689 (the "'689 patent"), U.S. Patent No. 9,792,662 (the "'662 patent"), U.S. Patent No. 10,102,601 (the "'601 patent"), and U.S. Patent No. 10,489,873 (the "'873 patent").  The '689 patent, '662 patent, '601 patent, and '873 patent are collectively referred to as the "Pixmarx patents," "asserted patents," or "patents-in-suit".

## THE PARTIES

1.      Plaintiff is a Texas limited liability company with its principal place of business located at 312 W 8th Street, Dallas, Texas 75208.

2.      Snap is a Delaware corporation with its principal place of business located at 2772 Donald Douglas Loop North, Santa Monica, California 90405.

## JURISDICTION AND VENUE

3.      Plaintiff brings this action for patent infringement under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

1

4.      Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process, due at least to its substantial business in this State and judicial district, including: committing acts of infringement in this judicial district as described herein; and regularly conducting or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods and products sold and services provided to Texas residents.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b). Defendant has a regular and established place of business in this judicial district.  For example, Defendant has a regular and established place of business at 3102 Oak Lawn Avenue, Dallas, Texas 75219.  In addition, Defendant has committed acts of infringement in this judicial district.

## THE PATENTS-IN-SUIT

6.      The '689 patent is entitled "Embedding Digital Content Within a Digital Photograph During Capture of the Digital Photograph."  The '689 patent lawfully issued on October 25, 2016 and stems from U.S. Patent Application No. 14/251,707, which was filed on April 14, 2014.  A copy of the '689 patent is attached hereto as Exhibit 1.

7.      The '662 patent is entitled "Embedding Digital Content Within a Digital Photograph During Capture of the Digital Photograph."  The '662 patent lawfully issued on October 17, 2017 and stems from U.S. Patent Application No. 15/275,166, which is a continuation of U.S. Patent Application No. 14/251,707 and was filed on September 23, 2016.  A copy of the '662 patent is attached hereto as Exhibit 2.

8.      The '601 patent is entitled "Embedding Digital Content Within a Digital Photograph During Capture of the Digital Photograph."  The '601 patent lawfully issued on October 16, 2018 and stems from U.S. Patent Application No. 15/705,703, which is a

continuation of U.S. Patent Application No. 15/275,166 and was filed on September 15, 2017.  A copy of the '601 patent is attached hereto as Exhibit 3.

9.      The '873 patent is entitled "Embedding Digital Content Within a Digital Photograph During Capture of the Digital Photograph."  The '873 patent lawfully issued on November 26, 2019 and stems from U.S. Patent Application No. 16/118,108, which is a continuation of U.S. Patent Application No. 15/705,703 and was filed on August 30, 2018.  A copy of the '873 patent is attached hereto as Exhibit 4.

10.     Plaintiff is the owner of the patents-in-suit with all substantial rights to the patents-in-suit including the exclusive right to enforce, sue, and recover damages for past and future infringement.

11.     The named inventors on the patents-in-suit are Barry Crutchfield and Gary Lipps.

12.     The patents-in-suit arose from Mr. Crutchfield's and Mr. Lipp's development of the Pixmarx application, an application that was first released on the Apple App Store in November 2013.

13.     The patents-in-suit share a specification and claim priority to U.S. Provisional Patent Application Serial No. 61/966,161, which was filed on February 15, 2014.

14.     The claims of the patents-in-suit are presumed valid.

15.     The claims of the patents-in-suit are directed to patent eligible subject matter under 35 U.S.C. § 101.  The claims of the patents-in-suit are not directed to an abstract idea, and the technologies claimed by the claims of the patents-in-suit consist of ordered combinations of features and functions that were not, alone or in combination, well-understood, routine, or conventional activities.

16.     The specifications of the patents-in-suit disclose shortcomings in the prior art and then explain, in detail, the technical way the inventions claimed in the patents-in-suit resolve or overcome those shortcomings.  *See, e.g.*, Ex. 4 ('873 patent), 7:7-50.  For example, the patents-in-suit explain that a drawback to prior art approaches to enhancing digital photographs was that they required application of separate processes after taking a photograph (e.g., editing a label, border, or special effect into a photograph after the photograph is taken).  *See* Ex. 4 ('873 patent), 2:9-16.  The patents-in-suit provide the following solution to the address drawbacks arising from prior art systems and methods for enhancing digital photographs:

  [E]mbodiments of the present invention are directed to displaying an embedded

  digital image (e.g., an electronic digital icon (e.g., watermark), picture, text, or the

  like) within an image viewing structure (e.g., eyepiece, visual display, or the like)

  of a digital imaging device prior to and during a photograph being taken using the

  digital imaging device.  Accordingly, when a user of such a digital imaging

  device takes the photograph, as-viewed visual content seen within the image

  viewing structure (i.e., the embedded digital image overlaid on to-be-

  photographed visual content) is the same as what would be a corresponding

  outputted digital file of the imaging device. In this regard, the corresponding

  outputted digital file is a 'What You See Is What You Get (WYSIWYG)'

  representation of the as-viewed visual content within the image viewing structure

  of the imaging device when the to-be-photographed visual content is captured by

  the digital imaging device.

Ex. 4 ('873 patent), 2:28-45; *see also id* at 4:7-25.  These solutions are reflected in the independent claims of the patents-in-suit.  For example, claim 1 of the '873 patent requires (in part):

> maintaining said embeddable content image in a static position in said image viewing structure when taking a captured image by the digital imaging device;
>
> displaying in combination in said image viewing structure a combined visual image comprising:
>
> > said embeddable content image in said static position displayed as a mask over said captured image;
> >
> > said captured image provided from said digital imaging device in real time when taken by the digital imaging device, the captured image selectively positioned relative to said embeddable content image . . . .

Claim 9 of the '601 patent requires (in part):

> displaying in combination in said image viewing structure a combined visual image comprising:
>
> > a captured image provided from said digital imaging device in real time at a location of taking a photograph;
> >
> > an embeddable content image provided by said wireless communication device, said embeddable content image displayed as a mask over said captured image, said embeddable content image maintained in a static position in said image viewing structure during the taking of the photograph . . . .

Claim 1 of the '662 patent requires (in part):

> in conjunction with displaying the user-selected embeddable content
> image on the image viewing structure, **causing** visual content captured in real-
> time by a digital imaging device of the digital imaging device at a current location
> thereof to be displayed on the image viewing structure in combination with the
> user-selected embeddable content image, wherein displaying the user-selected
> embeddable content image includes maintaining the user-selected embeddable
> content image at a static position within an area of the image viewing structure
> independent of the visual content that is within a field of view of the digital
> imaging device at the current location and wherein causing the visual content
> captured in real-time to be displayed on the image viewing structure in
> combination with the user-selected embeddable content image includes causing
> the user-selected embeddable content image to be displayed as a mask applied to
> the visual content that is being captured in real-time . . . .

And claim 1 of the '689 patent requires (in part):

> after displaying the user-selected embeddable content image on the image
> viewing structure, causing visual content captured in real-time by the digital
> imaging device at the current location to be displayed on the image viewing
> structure in combination with the user-selected embeddable content image,
> wherein displaying the user-selected embeddable content image includes
> maintaining the user-selected embeddable content image at a static position within
> an area of the image viewing structure independent of the visual content that is
> being captured in real-time by the digital imaging device such that the user-

selected embeddable content image remains displayed on the image viewing

structure in the static position irrespective of the visual content being captured by

the digital imaging device and wherein causing the visual content captured in real-

time by the digital imaging device at the current location to be displayed on the

image viewing structure in combination with the user-selected embeddable

content image includes causing the user-selected embeddable content image to be

displayed as a mask over the visual content that is being captured in real-time by

the digital imaging device . . . .

17.     The patents-in-suit also introduce the concept of providing embeddable content

(e.g., an electronic digital icon, picture, text, or the like) based on a digital imaging device's

location.  For example, the specification discloses "the embedded digital content is

advantageously selected based on an actual location of the digital imaging device at the time

when the to-be-photographed visual content is captured using the digital imaging device."  *See,*

*e.g.*, Ex. 4 ('873 patent), 4:21-25.  This concept, which is reflected (for example) in claim 1 of

the '689 patent, claim 2 of the '662 patent, claim 13 of the '601 patent, and claim 6 of the '873

patent, was not well-understood, routine, or conventional in the field of digital photography

when Mr. Crutchfield and Mr. Lipps filed U.S. Provisional Application Serial No. 61/966,161 or

U.S. Patent Application No. 14/251,707.  That the concept was not well-understood, routine, or

conventional is evidenced by the fact that Defendant did not introduce geofilters (design overlays

that are added on top of a photograph and that are specific to a particular location) into its

Snapchat product until July 2014.  *See* https://www.snap.com/en-US/news/post/introducing-

geofilters.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 10,489,873

18.     Plaintiff incorporates paragraphs 1 through 17 herein by reference.

19.     This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq.*

20.     Plaintiff is the owner of the '873 patent with all substantial rights to the '873 patent, including the exclusive right to enforce, sue, and recover damages for past and future infringement.

21.     The '873 patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

## DIRECT INFRINGEMENT (35 U.S.C. § 271(a))

22.     Defendant has infringed and continues to infringe one or more claims of the '873 patent in this judicial district and elsewhere in Texas and the United States.

23.     Defendant has infringed and continues to infringe, either by itself or via an agent, at least claims 1-3 and 5-24 of the '873 patent by, among other things, testing and using Snapchat, including (but not limited to) the lens features of Snapchat.

24.     Attached hereto as Exhibit 5, and incorporated herein by reference, is a claim chart detailing how Snapchat infringes the '873 patent.

25.     Defendant is liable for its infringements of the '873 patent pursuant to 35 U.S.C. § 271.

## INDIRECT INFRINGEMENT (INDUCEMENT – 35 U.S.C. § 271(b))

26.     Based on the information presently available to Plaintiff, absent discovery, and in the alternative and in addition to direct infringement, Plaintiff contends that Defendant has

8

indirectly infringed and continues to indirectly infringe one or more claims of the '873 patent by inducing direct infringement by end users of Snapchat.

27.     Defendant has knowledge of its infringements and those of Snapchat users based at least on filing and receipt of this complaint.  Upon information and belief, Defendant has also known about the '873 patent since before this complaint was filed.

28.     Upon information and belief, Defendant first learned of one or more of the Pixmarx patents during discussions with Pixmarx, LLC concerning the use of the mark GEOFILTER between October 2016 and February 2017.  At that time Defendant, or its representative, was aware of www.pixmarx.com, which by October 31, 2016, advertised the Pixmarx app as allowing users to "ADD GEOFRAMES TO YOUR PHOTOS" and identified the '689 patent.  Over time www.pixmarx.com was updated to identify the other Pixmarx patents.

29.     Defendant also has pre-suit knowledge of the '873 patent based on information sent to Defendant in August 2019.  On August 22, 2019, Defendant received a marketing package describing the Pixmarx patent portfolio.  The marketing package provided to Defendant identified U.S. Patent Publication 20090026854, for which a notice of allowance had been issued and which issued as the '873 patent, and explained (in part):

> The PixMarx patent portfolio includes five (5) patent assets, each directed to
> providing downloadable software image geofilters to mobile phone cameras for
> use in real-time, when end-users are taking photographs with mobile phones . . . .
>
> Each of these patent assets relates to the increasingly widespread and valuable
> practice of providing downloadable software image geofilters that are used in
> mobile phone cameras in real-time to provide instant customization when
> consumers are snapping photographs with their mobile phones.

30.     Based on its pre-suit knowledge of the '873 patent and/or the application that issued as the '873 patent, Defendant knew (or should have known) that use of Snapchat infringes claims of the '873 patent.   Alternatively, and to the extent Defendant contends it did not have knowledge that use of Snapchat infringed the '873 patent, Defendant was willfully blind to the fact.  Defendant knew that use of Snapchat was likely to infringe the '873 patent based at least on the materials sent to Defendant in August 2019 and deliberately ignored the '873 patent and/or the proper scope and application of the '873 patent's claims to Snapchat.

31.     Despite having knowledge (or being willfully blind to the fact) that use of Snapchat infringes the '873 patent, Defendant has specifically intended (and continues to specifically intend) for persons who acquire and use Snapchat, including Defendant's customers and end consumers, to use Snapchat in a way that results in infringement of the '873 patent, including at least claims 1-3 and 5-24, and Defendant knew or should have known that its actions have induced, and continue to induce, infringement.

32.     Defendant instructs and encourages users to use Snapchat in a manner that infringes the '873 patent.  For example, Defendant provides users with Snapchat, and Defendant's product support webpage (https://support.snapchat.com/en-US/article/face-world-lenses) provides end users with detailed instructions on how to use the "lens" features of Snapchat in a way that results in infringement of the '873 patent.  Defendant also advertises and promotes use of Snapchat in a manner that results in infringement of the '873 patent by publishing instructional materials on line (e.g., Filters and Lenses on Snapchat published by Defendant on YouTube, available at https://www.youtube.com/watch?v=PN76vow1TUc).

33.     Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count.  Defendant is, thus, liable to Plaintiff in an amount that adequately

compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 10,102,601

34.     Plaintiff incorporates paragraphs 1 through 33 herein by reference.

35.     This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq.*

36.     Plaintiff is the owner of the '601 patent with all substantial rights to the '601 patent including the exclusive right to enforce, sue, and recover damages for past and future infringement.

37.     The '601 patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

## DIRECT INFRINGEMENT (35 U.S.C. § 271(a))

38.     Defendant has infringed and continues to infringe one or more claims of the '601 patent in this judicial district and elsewhere in Texas and the United States.

39.     Defendant has infringed and continues to infringe, either by itself or via an agent, claims 1-16 of the '601 patent by, among other things, testing and using Snapchat, including (but not limited to) the lens features of Snapchat.

40.     Attached hereto as Exhibit 6, and incorporated herein by reference, is a claim chart detailing how Snapchat infringes the '601 patent.

41.     Defendant is liable for its infringements of the '601 patent pursuant to 35 U.S.C. § 271.

## INDIRECT INFRINGEMENT (INDUCEMENT – 35 U.S.C. § 271(b))

42.     Based on the information presently available to Plaintiff, absent discovery, and in the alternative and in addition to direct infringement, Plaintiff contends that Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '601 patent by inducing direct infringement by end users of Snapchat.

43.     Defendant has knowledge of its infringements and those of Snapchat users based at least on filing and receipt of this complaint.  Upon information and belief, Defendant has also known about the '601 patent since before this complaint was filed.

44.     Upon information and belief, Defendant first learned of one or more of the Pixmarx patents during discussions with Pixmarx, LLC concerning the use of the mark GEOFILTER between October 2016 and February 2017.  At that time Defendant, or its representative, was aware of www.pixmarx.com, which by October 31, 2016, advertised the Pixmarx app as allowing users to "ADD GEOFRAMES TO YOUR PHOTOS" and identified the '689 patent.  Over time www.pixmarx.com was updated to identify the other Pixmarx patents.

45.     Defendant also has pre-suit knowledge of the '601 patent based on information sent to Defendant in August 2019.  On August 22, 2019, Defendant received a marketing package describing the Pixmarx patent portfolio.  The marketing package provided to Defendant identified the '601 patent and explained (in part):

> The PixMarx patent portfolio includes five (5) patent assets, each directed to providing downloadable software image geofilters to mobile phone cameras for use in real-time, when end-users are taking photographs with mobile phones . . . .
>
> Each of these patent assets relates to the increasingly widespread and valuable practice of providing downloadable software image geofilters that are used in

12

mobile phone cameras in real-time to provide instant customization when
consumers are snapping photographs with their mobile phones.

46.     Based on its pre-suit knowledge of the '601 patent and/or the application that
issued as the '601 patent, Defendant knew (or should have known) that use of Snapchat infringes
claims of the '601 patent.   Alternatively, and to the extent Defendant contends it did not have
knowledge that use of Snapchat infringed the '601 patent, Defendant was willfully blind to the
fact.  Defendant knew that use of Snapchat was likely to infringe the '601 patent based at least
on the materials sent to Defendant in August 2019 and deliberately ignored the '601 patent
and/or the proper scope and application of the '601 patent's claims to Snapchat.

47.     Despite having knowledge (or being willfully blind to the fact) that use of
Snapchat infringes the '601 patent, Defendant has specifically intended (and continues to
specifically intend) for persons who acquire and use Snapchat, including Defendant's customers
and end consumers, to use Snapchat in a way that results in infringement of the '601 patent,
including at least claims 1-16, and Defendant knew or should have known that its actions have
induced, and continue to induce, infringement.

48.     Defendant instructs and encourages users to use Snapchat in a manner that
infringes the '601 patent.  For example, Defendant provides users with Snapchat, and
Defendant's product support webpage (https://support.snapchat.com/en-US/article/face-world-
lenses) provides users with detailed instructions on how to use the "lens" features of Snapchat in
a way that results in infringement of the '601 patent.  Defendant also advertises and promotes
use of Snapchat in a manner that results in infringement of the '601 patent by publishing
instructional materials on line (e.g., Filters and Lenses on Snapchat published by Defendant on
YouTube, available at https://www.youtube.com/watch?v=PN76vow1TUc).

49.     Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count.  Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III
### INFRINGEMENT OF U.S. PATENT NO. 9,792,662

50.     Plaintiff incorporates paragraphs 1 through 49 herein by reference.

51.     This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq.*

52.     Plaintiff is the owner of the '662 patent with all substantial rights to the '662 patent including the exclusive right to enforce, sue, and recover damages for past and future infringement.

53.     The '662 patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

### DIRECT INFRINGEMENT (35 U.S.C. § 271(a))

54.     Defendant has infringed and continues to infringe one or more claims of the '662 patent in this judicial district and elsewhere in Texas and the United States.

55.     Defendant has infringed and continues to infringe, either by itself or via an agent, at least claims 1, 2, 6, 8-10, 12, 13, and 16 of the '662 patent by, among other things, testing and using Snapchat, including (but not limited to) the lens features of Snapchat.

56.     Attached hereto as Exhibit 7, and incorporated herein by reference, is a claim chart detailing how Snapchat infringes the '662 patent.

57.     Defendant is liable for its infringements of the '662 patent pursuant to 35 U.S.C. § 271.

14

## INDIRECT INFRINGEMENT (INDUCEMENT – 35 U.S.C. § 271(b))

58.    Based on the information presently available to Plaintiff, absent discovery, and in the alternative and in addition to direct infringement, Plaintiff contends that Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '662 patent by inducing direct infringement by end users of Snapchat.

59.    Defendant has knowledge of its infringements and those of Snapchat users based at least on filing and receipt of this complaint.  Upon information and belief, Defendant has also known about the '662 patent since before this complaint was filed.

60.    Upon information and belief, Defendant first learned of one or more of the Pixmarx patents during discussions with Pixmarx, LLC concerning the use of the mark GEOFILTER between October 2016 and February 2017.  At that time Defendant, or its representative, was aware of www.pixmarx.com, which by October 31, 2016, advertised the Pixmarx app as allowing users to "ADD GEOFRAMES TO YOUR PHOTOS" and identified the '689 patent.  Over time www.pixmarx.com was updated to identify the other Pixmarx patents.

61.    Defendant also has pre-suit knowledge of the '662 patent based on information sent to Defendant in August 2019.  On August 22, 2019, Defendant received a marketing package describing the Pixmarx patent portfolio.  The marketing package provided to Defendant identified the '662 patent and explained (in part):

The PixMarx patent portfolio includes five (5) patent assets, each directed to providing downloadable software image geofilters to mobile phone cameras for use in real-time, when end-users are taking photographs with mobile phones . . . .

Each of these patent assets relates to the increasingly widespread and valuable practice of providing downloadable software image geofilters that are used in

mobile phone cameras in real-time to provide instant customization when
consumers are snapping photographs with their mobile phones.

62.     Based on its pre-suit knowledge of the '662 patent and/or the application that
issued as the '662 patent, Defendant knew (or should have known) that use of Snapchat infringes
claims of the '662 patent.   Alternatively, and to the extent Defendant contends it did not have
knowledge that use of Snapchat infringed the '662 patent, Defendant was willfully blind to the
fact.  Defendant knew that use of Snapchat was likely to infringe the '662 patent based at least
on the materials sent to Defendant in August 2019 and deliberately ignored the '662 patent
and/or the proper scope and application of the '662 patent's claims to Snapchat.

63.     Despite having knowledge (or being willfully blind to the fact) that use of
Snapchat infringes the '662 patent, Defendant has specifically intended (and continues to
specifically intend) for persons who acquire and use Snapchat, including Defendant's customers
and end consumers, to use Snapchat in a way that results in infringement of the '662 patent,
including at least claims 1, 2, 6, 8-10, 12, 13, and 16, and Defendant knew or should have known
that its actions have induced, and continue to induce, infringement.

64.     Defendant instructs and encourages users to use Snapchat in a manner that
infringes the '662 patent.  For example, Defendant provides users with Snapchat, and
Defendant's product support webpage (https://support.snapchat.com/en-US/article/face-world-
lenses) provides users with detailed instructions on how to use the "lens" features of Snapchat in
a way that results in infringement of the '662 patent.  Defendant also advertises and promotes
use of Snapchat in a manner that results in infringement of the '662 patent by publishing
instructional materials on line (e.g., Filters and Lenses on Snapchat published by Defendant on
YouTube, available at https://www.youtube.com/watch?v=PN76vow1TUc).

65. Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count.  Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV
### INFRINGEMENT OF U.S. PATENT NO. 9,477,689

66. Plaintiff incorporates paragraphs 1 through 65 herein by reference.

67. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq.*

68. Plaintiff is the owner of the '689 patent with all substantial rights to the '689 patent including the exclusive right to enforce, sue, and recover damages for past and future infringement.

69. The '689 patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

### DIRECT INFRINGEMENT (35 U.S.C. § 271(a))

70. Defendant has infringed and continues to infringe one or more claims of the '689 patent in this judicial district and elsewhere in Texas and the United States.

71. Defendant has infringed and continues to infringe, either by itself or via an agent, at least claims 1, 6, 8, 10, 12, and 16 of the '689 patent by, among other things, testing and using Snapchat, including (but not limited to) the lens features of Snapchat.

72. Attached hereto as Exhibit 8, and incorporated herein by reference, is a claim chart detailing how Snapchat infringes the '689 patent.

73. Defendant is liable for its infringements of the '689 patent pursuant to 35 U.S.C. § 271.

17

## INDIRECT INFRINGEMENT (INDUCEMENT – 35 U.S.C. § 271(b))

74.     Based on the information presently available to Plaintiff, absent discovery, and in the alternative and in addition to direct infringement, Plaintiff contends that Defendant has, and continues to, indirectly infringe one or more claims of the '689 patent by inducing direct infringement by end users of Snapchat.

75.     Defendant has knowledge of its infringements and those of Snapchat users based at least on filing and receipt of this complaint.  Upon information and belief, Defendant has also known about the '662 patent since before this complaint was filed.

76.     Upon information and belief, Defendant first learned of one or more of the Pixmarx patents during discussions with Pixmarx, LLC concerning the use of the mark GEOFILTER between October 2016 and February 2017.  At that time Defendant, or its representative, was aware of www.pixmarx.com, which by October 31, 2016 advertised the Pixmarx app as allowing users to "ADD GEOFRAMES TO YOUR PHOTOS" and identified the '689 patent.  Over time www.pixmarx.com was updated to identify the other Pixmarx patents.

77.     Defendant also has pre-suit knowledge of the '689 patent based on information sent to Defendant in August 2019.  On August 22, 2019, Defendant received a marketing package describing the Pixmarx patent portfolio.  The marketing package provided to Defendant identified the '689 patent and explained (in part):

The PixMarx patent portfolio includes five (5) patent assets, each directed to providing downloadable software image geofilters to mobile phone cameras for use in real-time, when end-users are taking photographs with mobile phones . . . .

Each of these patent assets relates to the increasingly widespread and valuable practice of providing downloadable software image geofilters that are used in

mobile phone cameras in real-time to provide instant customization when consumers are snapping photographs with their mobile phones.

78.     Based on its pre-suit knowledge of the '689 patent and/or the application that issued as the '689 patent, Defendant knew (or should have known) that use of Snapchat infringes claims of the '689 patent.   Alternatively, and to the extent Defendant contends it did not have knowledge that use of Snapchat infringed the '689 patent, Defendant was willfully blind to the fact.  Defendant knew that use of Snapchat was likely to infringe the '689 patent based at least on the materials sent to Defendant in August 2019 and deliberately ignored the '689 patent and/or the proper scope and application of the '689 patent's claims to Snapchat.

79.     Despite having knowledge (or being willfully blind to the fact) that use of Snapchat infringes the '689 patent, Defendant has specifically intended (and continues to specifically intend) for persons who acquire and use Snapchat, including Defendant's customers and end consumers, to use Snapchat in a way that results in infringement of the '689 patent, including at least claims 1, 6, 8, 10, 12, and 16, and Defendant knew or should have known that its actions have induced, and continue to induce, infringement.

80.     Defendant instructs and encourages users to use Snapchat in a manner that infringes the '689 patent.  For example, Defendant provides users with Snapchat, and Defendant's product support webpage (https://support.snapchat.com/en-US/article/face-world-lenses) provides users with detailed instructions on how to use the "lens" features of Snapchat in a way that results in infringement of the '689 patent.  Defendant also advertises and promotes use of Snapchat in a manner that results in infringement of the '689 patent by publishing instructional materials on line (e.g., Filters and Lenses on Snapchat published by Defendant on YouTube, available at https://www.youtube.com/watch?v=PN76vow1TUc).

81.     Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count.  Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

Plaintiff requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Plaintiff asks that the Court find in its favor and against Defendant and that the Court grant Plaintiff the following relief:

a.  Judgment that one or more claims of the '873 patent, '601 patent, '662 patent, or '689 patent have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

b.  Judgment that Defendant account for and pay to Plaintiff all damages and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, including an accounting for any sales or damages not presented at trial;

c.  Judgment that Defendant account for and pay to Plaintiff a reasonable, ongoing, post-judgment royalty because of Defendant's infringing activities, including continuing infringing activities, and other conduct complained of herein;

d.  That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

e.  That the Court find this case exceptional under the provisions of 35 U.S.C. § 285 and award enhanced damages; and

f.  That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

DATED: May 7, 2020                    Respectfully submitted,


                                      */s/ Edward R. Nelson III*
                                      Edward R. Nelson III
                                      Texas Bar No. 00797142
                                      ed@nbafirm.com
                                      Christopher G. Granaghan
                                      Texas Bar No. 24078585
                                      chris@nbafirm.com
                                      NELSON BUMGARDNER ALBRITTON P.C.
                                      3131 West Seventh Street, Suite 300
                                      Fort Worth, Texas 76107
                                      Telephone: (817) 377-9111


                                      *COUNSEL FOR PLAINTIFF PIXMARX IP LLC*